UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID R. LIRA | No. 23 CR 54-3<br><br>Judge Mary M. Rowland |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S CLARIFICATIONS AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND COMMENTARY ON SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, hereby submits its response to defendant's sentencing papers (Dkt. No. 174). As discussed below and in its objections to the Presentence Investigation Report and Sentencing Memorandum, the government respectfully requests that the Court impose a sentence of 36 months' imprisonment.

I.  The Advisory Guidelines Calculations

The base offense level should be governed by U.S.S.G. § 2B1.1, with increases to the adjusted offense level because the offense involved vulnerable victims and the abuse of trust or use of a special skill pursuant to §§ 3A1.1(b) and 3B1.3. Defendant should not receive a minor participant reduction under § 3B1.2(b). And, if the Court does apply the obstruction guideline in § 2J1.2, the three-level enhancement for substantial interference with justice in § 2J1.2(b)(2) should apply.

### *The Base Offense Level*

The most closely analogous guideline here is the fraud guideline in § 2B1.1, even if the Court were to use an elements-based analysis. Recently, in *United States v. Betts*, 99 F. 4th 1048, 1051 (7th Cir. 2024), the Seventh Circuit affirmed the use of this fraud guideline in an offense involving the Anti-Riot Act, 18 U.S.C. § 2101, when using an elements-based analysis. The defendant in *Betts* posted a flyer on Facebook calling on people to "bring posters, bricks, and bookbags to a 'RIOT' at a mall." *Id*. The next day, a riot ensued causing property damage to several businesses. *Id*. The defendant pled guilty, and the Seventh Circuit upheld the use of § 2B1.1 as the most closely analogous guideline; the Anti-Riot Act did not have a specific guideline provision. *Id*. at 1056.

The court used the elements-based approach and concluded that § 2B1.1 was the most closely analogous guideline. *Id*. at 1056. The defendant argued on appeal that the Anti-Riot Act did not have "property damage" as an element of the offense and § 2B1.1 would not apply. *Id*. The court rejected that argument: "the elements-based approach does not require the same exact elements. It need only be 'sufficiently analogous' and not 'a perfect match.'" *Id*. The court reasoned that "the property damage guideline is sufficiently analogous to the Anti-Riot Act, which does not include as an exact element property damage, but does contemplate, or can involve, property damage." *Id*. The court concluded that § 2B1.1 was in the same "proverbial 'ballpark' as the Anti-Riot Act." *Id*.

2

While *Betts* did not analyze the criminal contempt statute at issue here, its reasoning is persuasive. Court orders directing the disbursement of settlement funds are commonplace in civil litigation in federal courts across the country. These types of orders are akin to orders to pay child support, which application note 3 to § 2J1.1 uses as an example for when § 2B1.1 applies. The Introductory Comment to § 2B states that "[t]hese guidelines apply to offenses prosecuted under a wide variety of federal statutes," and more specifically § 2B1.1 states that "[t]his guideline covers offenses involving theft." U.S.S.G. § 2B1.1, comment. (backg'd.).

The court in *Betts* stated that the Court "need not consider the underlying facts" in an elements-based analysis, *Betts*, 99 F.4th at 1057, but they provide helpful context to show why §2B1.1 applies in a criminal contempt case where theft prevented compliance with a court order to pay settlement funds. *See United States v. Ferrara*, 334 F.3d 774, 777 (8th Cir. 2003) (the "elements of contempt of court are of little help in determining the most analogous guideline" because "misconduct constituting contempt of court varies significantly" and is "highly context dependent." (internal quotation marks and citations omitted)).

Judge Durkin did not know when he entered the settlement orders in February 2020 and March 2020 that Thomas Girardi was lying and not paying firm clients. But defendant knew both of those facts at that time. Defendant knew that Girardi was not running a legitimate law firm at that point. Defendant then watched what happened before occur yet again: Girardi started lying to the Victim Clients and

3

making more excuses about why they were not being paid. *Cf. United States v. Trudeau*, 812 F.3d 578 n.6 (7th Cir. 2016) ("The Sentencing Commission instructs courts to use §2B1.1, the guideline for Basic Economic Offenses, to calculate a sentencing range for contempt arising out of a violation of a court order enjoining fraudulent conduct."). Although Judge Durkin's orders did not enjoin fraudulent conduct (because no one outside of Girardi Keese knew what kind of crook Girardi was at that time), the orders required prompt payment to the Victim Clients, and those funds were then stolen. Defendant knew that would happen, he watched it happen, and he covered for Girardi. That is why §2B1.1 should be the base offense level.

### *The Vulnerable Victim and Abuse of Trust or Use of a Special Skill Enhancements*

Defendant argues that neither the vulnerable victim enhancement nor the abuse of trust or use of a special skill enhancement apply. Dkt. 174, at 10-16. Defendant cannot dispute that he was the Victim Clients' lawyer and that he lied to them repeatedly. Defendant argues that his contempt conviction still does not implicate these enhancements. Not so. The Seventh Circuit has held that the vulnerable victim enhancement can apply "where the vulnerable victim was not the victim of the offense of conviction, but was harmed by the conduct involved in the commission of the offense." *United States v. Cruz*, 317 F.3d 763, 766 (7th Cir. 2003); *accord United States v. Stewart*, 33 F.3d 764, 770-71 (7th Cir. 1994). The Victim

4

Clients were undoubtedly harmed by defendant's criminal conduct because they did not receive their full settlements until almost two years later.

So too can the abuse of trust enhancement apply when a "defendant also harmed the person whose trust she did abuse." *Cruz*, 317 F.3d at 766; *see also United States v. Bhagavan*, 116 F.3d 189, 193 (7th Cir. 1997) (defendant convicted of income tax evasion by stealing from the company he controlled where the victim was the IRS received an abuse of trust enhancement given his responsibility to the minority shareholders of the company who trusted him and lost money). As their lawyer, defendant owed the Victim Clients fiduciary duties to protect their interests. His willful disobedience of Judge Durkin's payment orders abused the trust that the Victim Clients placed in him to represent their interests, thus warranting this enhancement. *See Bhagavan*, 116 F.3d at 193 ("It is enough that identifiable victims of [the defendant's] overall scheme to evade his taxes put him in a position of trust and that his position 'contributed in some significant way to facilitating the commission or concealment of the offense' [(e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult.].[1]" (quoting Application Note 1, U.S.S.G. § 3B1.3)). The Victim Clients were directly harmed because of defendant's contemptuous conduct and both enhancements should apply.

---

[1] The bracketed language quotes the rest of the sentence in the Application Note.

Even if the Court applies § 2J1.2 as the base offense level, the enhancements under §§ 3A1.1(b)(1) and 3B1.3 should apply.

### *The Minor Participant Reduction Does Not Apply*

Section 3B1.2 provides for a two-level reduction in the adjusted offense level if the defendant "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). Two factors that the Court should consider here are "the degree to which the defendant understood the scope and structure of the criminal activity" and "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts." *Id*. App. N. 3(C)(i), (iv). A defendant must be substantially less culpable than other participants to merit this offense level reduction. *See United States v. Wang*, 707 F.3d 911, 917 (7th Cir. 2013); *United States v. Watts*, 535 F.3d 650, 659 (7th Cir. 2008). A defendant bears the burden to prove the applicability of this reduction by a preponderance of the evidence. *United States v. Lopez*, 545 F.3d 515, 516 (7th Cir. 2008).

Defendant has not met his burden. Defendant understates his role in the offense. Girardi needed defendant to give him cover with the Victim Clients, and to repeat Girardi's lies to them, which defendant did for months. Defendant had direct contact with the Victim Clients and kept lying to them. He concealed Girardi's lies from his local counsel. He also had the ability to go directly to Judge Durkin. Instead of doing anything to unearth the fraud and explain why he and no one at Girardi

6

Keese complied with Judge Durkin's orders, defendant did nothing and then lied to Judge Durkin during the evidentiary hearing. Defendant is not the type of defendant who should receive a minor participant reduction, and he has not carried his burden to do so.

### *The Obstruction Guideline*

If § 2J1.2 were the operative guideline provision here, the three-level enhancement for substantial interference with justice in §2J1.2(b)(2) should apply. *See* U.S.S.G. § 2J1.2(a), (b)(2); *United States v. Tankersley*, 296 F.3d 620, 623 (7th Cir. 2002) ("The Sentencing Guidelines further explain that substantial interference includes 'the unnecessary expenditure of substantial governmental resources or court resources.' U.S.S.G. §2J1.2, cmt. n.1. In the present case, [the defendant] failed to comply with the district court's preliminary injunction, and as a result of that failure, the government and the receiver expended substantial resources investigating [the defendant] and securing his assets.").

Judge Durkin had to expend extraordinary court resources as a result of defendant's conduct. Initially, during a status hearing on December 14, 2020, after Judge Durkin learned that the Victim Clients had not been paid, defendant lied to Judge Durkin, stating that he was unaware of when the funding came through for the Victim Clients. That was not true: defendant knew those settlements had funded, that Girardi was not paying the Victim Clients the full amounts, and that defendant had covered for Girardi by lying to the Victim Clients about the delay. To figure out

7

what happened and why the Victim Clients had not been paid, and who knew what and when, Judge Durkin held a three-day evidentiary hearing in 2021. None of this would have happened had defendant spoken up earlier about his inability to comply with the settlement payment orders because of Girardi's theft. At the evidentiary hearing, defendant continued to lie in an attempt to distance himself from Girardi's fraud by denying knowing about (1) other Girardi Keese clients who had not been paid in the past; and (2) other instances where Girardi lied to clients. Judge Durkin then had to sift through all the evidence to determine what happened, and write an opinion. These facts warrant the enhancement.

## II.     Defendant's Characterization of His Conduct

Defendant's sentencing papers characterize his conduct as one of "nonfeasance." Dkt. No. 174, at 13, 21. That is an understatement. Defendant actively lied to the Victim Clients and Judge Durkin. Defendant knew Girardi had not been paying other clients before the Boeing settlements funded and was lying to those other clients. Defendant also knew that Girardi was not paying the Victim Clients once those settlements funded. Instead of ringing the alarm bell, defendant covered for Girardi and lied to the Victim Clients repeatedly. Defendant's lies to the Victim Clients perpetuated Girardi's theft in real time. Defendant's lies to Judge Durkin concealed it after-the-fact, and are also telling because defendant told those lies to distance himself from Girardi's fraud.

8

Defendant also tried to portray himself in a positive light when confronting Girardi, calling him a thief (although defendant now conveniently states that he was not entirely sure that Girardi was a thief then despite directing other Lion Air client settlements away from Girardi for fear that Girardi would keep the referring lawyer's fees (Dkt. No. 174, at 22), and quitting the law firm in June 2020.

Instead of using his microphone in the California legal community to share his misgivings about Girardi, defendant wrote an article published that same month touting defendant's experience in the Lion Air cases. *See* Exhibit A, at 4. Defendant could have written an article exposing Girardi as a thief, but he instead focused on buttressing his own image. Despite what he says now, defendant knew that Girardi was a thief then and was stealing from clients. Defendant was more focused on protecting defendant's own professional career, and in doing so, defendant covered up for Girardi protecting both of them. Defendant then lied to Judge Durkin. This conduct is serious and warrants a meaningful term of imprisonment.

## CONCLUSION

For the reasons in the government's sentencing papers and as set forth above, the government respectfully requests that the Court impose a sentence of 36 months' imprisonment.

Dated: October 1, 2025

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Jared Hasten*
JARED HASTEN
EMILY C.R. VERMYLEN
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300
jared.hasten2@usdoj.gov